The next case for argument is 15-3200 Carrigan v. MSPB Mr. Margolis, whenever you're ready. Yes, thank you. Good morning. May it please the court. My name is Paul Margolis. I represent the petitioner, Philip Carrigan. Mr. Carrigan should be entitled to a remand of his retaliation action to the Merit Systems Protections Board. The IRA appeal, which was his basis of going to the MSPB, does not challenge and it does not depend on the merits of the underlying determination to terminate his benefits for failure to attend vocational rehabilitation training. Can I just switch gears a little? I understand that's the issue of the basis upon which the board decided this case, but assume for a moment that I'm not persuaded by that. Can I just ask you a general question? Sure. If I'm just some citizen, not a federal employee, and I live in Montana, and I deal with Social Security, and I deal with the IRS because I file my taxes, and I send letters to both of them complaining about how they've handled my proceedings, and then something happens, do I get a whistleblower case against them? No. The whistleblower protection in this case relates to the fact that he was being administered benefits through the Office of Worker Compensation Program. This is not an area that I normally practice in, but my understanding from working on this case- I mean, there may be a similar proceeding for Social Security. But you would define the scope of the whistleblower protection to any federal agency that distributes benefits or has any benefits, that's their job, that any citizen who's not an employee of that agency or even any other federal agency can file a whistleblower- I mean, that is my understanding. The Whistleblower Protection Act specifically calls out employees or applicants, I think, in one place. That's right, and Mr. Kerrigan was a government employee. But not at the time of his disclosure. He was released, if I understand it, way back when, in 1986 or whatever. Right, so Mr. Kerrigan suffered this severe back injury in the mid-'80s where they removed part of his vertebrae and basically rendered him incapable of working. And then he began, since that injury occurred while he was working as a government employee, he was approved for benefits. And that continued without incident. So he's a beneficiary but not an employee. Well, but he was an employee when he suffered the injury that led to the administration of his benefits. Was he an employee when he made his disclosure? He was a recipient of benefits because of his injury while as an employee. Right, but recipient of benefits is not in the statute. That isn't one of the qualifying requirements of the statute. It's employee or, in the case of applicant for employment. Well, but I don't think- I would just add to what Judge Bryson said. It refers to personnel actions. But I believe that this court's opinion in Eunice, which sets forth the allegations that are required to make out a WPA claim, they don't speak to this issue. They don't require- But Eunice was the case where Mr. Eunice, Dr. Eunice I think it was, was in fact an employee of the VA. That's true. And all of our cases, with I think virtually no exceptions, have been cases in which the person was either an employee or an applicant for employment, understandably because that's in the statute. It seems to me you're suggesting that someone- Suppose I am in the position of Judge Prost's person who has a complaint with the Social Security Administration. It so happens that I was employed, let's say, by the government 40 years ago, having nothing to do with Social Security. I just- I was an employee. Am I entitled to relief because I was an employee way back then or where somebody who was never employed by the federal government is not entitled to relief? I can't believe that's the way the statute works. Well, I don't actually think that that's a reasonable comparison to this case, Your Honor. Well, not in this case, but I want to know what the statute seems to require because if the statute only requires that you at some point have been an employee of the government, then it's much broader than I've ever understood it to be. Well, I think that is the way that the statute is supposed to apply. So in my case, having worked one summer for the federal government, I now am in a different position with respect to whistleblowing from anyone else, no matter what agency, whether my employing agency or some other agency I complain about. No, no, Your Honor. Only if the benefits arise out of your government work. If you are- in this particular case, Mr. Kerrigan's injury occurred whilst a government employee. The reasoning that's being suggested would penalize him for the fact that he was injured. If he was a continual employee who had not had part of his spine removed, then he would be able to claim whistleblower protection. But because his injury while working as a government employee rendered him unable to work, then he would not be entitled to those protections. I'd like to try to articulate what you say the limitation would be to this broad scope. So if in connection with your federal employment, you derive some benefits as a federal employee, then forever that association gives you- well, what about I earned Social Security? I worked for NASA 30 years ago, for a year. And when you calculate my Social Security benefits, there's some- we're talking about that time period is included. Is that enough of a nexus? I don't believe so, Your Honor. I think that you would have to- I think that the administration of the benefits would have to have a connection to your employment as a government employee. And in your hypothetical, I don't think that would be the case. Is there anything in the statute you can show us? Is that enough connection that comes under the rubric then of being an employee, that comes under a personnel action? Well, I mean- The statute that you want to- Yeah. I mean, my understanding is that Section 2302 is talking about an agency taking a personnel action. And that's exactly what happened here. The agency was taking an action against Mr. Kerrigan. And the agency action related to the administration of his benefits for the injury that he incurred while working as a government employee. So it seems to me that sort of the idea that, as I mentioned before, the idea that's being discussed here would penalize Mr. Kerrigan for the fact that he was injured. So he would basically- the fact that his government employment rendered him unable to work would work to his detriment when ultimately he determines that the form that was used to deny his initial selection of physician was destroyed. And it would work against him, despite the fact that the only reason he is a former employee is as a result of his government employment. So I would argue that it's far different than the situation of somebody who works for a year and then is getting Social Security later. There's a direct nexus here between his government employment, his work as a carpenter for the Department of Navy, and the injury, which is the reason that he obtained benefits. Can I turn you to a different issue that- we still haven't gotten into the issue that I'm sure you spent most of your preparation time on. That's quite right. But assuming you win on that, there is still footnote two of the board's opinion, which deals with the much more common situation in which the claim that's made for whistleblowing does not show enough evidence, even at the jurisdictional stage, to justify going forward on the question of the nexus between the disclosure and the personnel action that was taken. Now, focusing, as we must, not on the points you've made in your brief, where you've gone through the documents and you found a document that has a date stamp on it that looked like it was the same date that something important in the events occurred. But just looking at the documents that were presented to the administrative judge and the board, which is what we have to limit ourselves to, what in those documents is sufficient to establish a non-frivolous allegation that the action was taken in retaliation for the disclosure? Right. So beyond the fact, I think you already mentioned that- so I'll talk about the form or the submission second. On page 190 and 191 of the appendix, Mr. Kerrigan does set forth numerous persons who were aware of his allegations against the Department of Labor. And in addition, as we pointed out in the briefs, he does allege that he does detail the allegations of forgery and destruction of documents, explains that the CA-16 form was destroyed. He explains that he was referred to vocational immediately upon reporting those benefits. And then he states his belief that the fraud and abuse, and it's his belief because he doesn't know the inner workings of what goes on at the ECAB, but he explicitly states with his belief that the fraud and abuse resulted in the termination of benefits. Well, everyone says that that's their belief. But the question is, what evidence is there to support that belief? Is there even enough, really, to get over the non-frivolous? Because if we said, stating earnestly and with conviction, your belief that this was caused, then 100 percent of the cases would satisfy the non-frivolous allegation standard. That's not the- No, no. I agree with that, Your Honor. But here, the court has set up a test for this. It's a disinterested observer test. Right, right. And Mr. Kerrigan's knowledge is imputed to that disinterested observer. And under the law of this case- Well, but his knowledge isn't attributed. He has to convey that knowledge to the board. Right, but here there's no question that he did. Well, okay. What are the specific things that you think are the most telling pieces of evidence that he disclosed to the board that show a connection between the termination of his benefits, which occurred, I guess, in March of 2002. Correct. And his disclosures, which I guess were most, at least to the Labor Department, were in the November 21st, 2001 letter. That's correct. Okay. So I think when I sit down here before my rebuttal, I'll go through the appendix again so I can give you some more specific page numbers. But he did allege throughout the process that the action was taken against him because he made the protected disclosures. And as I understand the law, the timing of it creates an inference of causation. And that's how, based on the case law that's cited in both parties' briefs, I think the parties agree that in a short timeframe there's an inference of causation. Well, I'm not sure timing is sufficient in and of itself. And I don't know. I mean, I guess it's one of the inferences you could draw. But there's another rationale to explain the timing. It's not like nothing happened in 10 years. He never had any contact. And then suddenly, the week after he sends the letter, they do it. If you look at the record and the various things that were going on, the medical exam in mid-2001, his request for whatever it was. Lump sum. That lump sum thing shortly before the termination. Clearly, people were working on his paperwork and his case. So the fact that in December they come up and they said, you need to go to vocational rehabilitation, there's a perfectly reasonable explanation for that timing other than your explanation. Well, except I do think, again, we're talking about a jurisdictional motion. We're effectively talking about a motion to dismiss standard. So Mr. Kerrigan is entitled to all inferences. And it certainly is reasonable that if you were not referred to vocational training within an eight-year dispute, and then the day the office receives your notice of allegations, they then refer you to vocational training, it seems reasonable that if you did not take that action in eight years, that there is causation. That's a point you put into your brief, but that was not made to the board. That point was, I mean, that would have been a point that I would have thought, that's interesting. But nothing. I mean, there was that document was buried, I have to say, in a 42-page addendum to a motion to seal. That's not putting it before the board in any meaningful way. He didn't call attention to the fact of this. You'd have to look at the motion to seal, pour through the 42 pages of quite irrelevant stuff, find that document, and then look down at the bottom and see that that document had a stamp on it, which turns out to have been the same day that something in this progression of events leading to his determination of his payments occurred. I do agree that the document, as you say, I think you stated out the facts correctly, the document is in there, and yes, it was not specifically called out in his motion. However, I think this court recently addressed this issue in Cahill, that we need to be careful to not treat these pro se litigants through a hyper-technical lens. If they have presented the facts and the evidence, if the evidence is in the record from which a reasonable inference can be drawn, particularly on a jurisdictional motion, and we're talking about notice pleading, we're talking about a motion to dismiss, if under that liberal type of standard, to hold a pro se plaintiff through that hyper-technical lens seems unfair. I don't know if that's hyper-technical. I think if you were the administrative judge and were presented with that motion to seal, after having been presented with a different response to the jurisdictional statement, which didn't include any of that material, even a careful lawyer such as yourself, I am confident, quite confident, would not have poured through that motion to seal and found that document with that stamp there and said, ah-ha, let's see if that date lines up with any of the other dates. That's really going beyond hyper-technical, it seems to me. Although in this case, Your Honor, that issue didn't sort of arise, I think, in sort of the normal course in which it might have. There was a first, in his initial submission, he obtained initial rejection because he was not a, they said, no jurisdiction because you're not a Department of Labor employee. Then when that was appealed, they said, well, no, that doesn't make sense. The Department of Labor's been administering your benefits for a year. So now we're going to say that a whistleblower protection act isn't collateral. And so then they, right, there's this footnote, and the footnote then says, well, there's this other type of issue as well. But that was not really, that was not, that was not, I think, an issue that was in Mr. Kerrigan's mind. Well, it should have been because when the board sends out, and they sent out the form in this case, when they send out a form on jurisdiction, they lay out for whistleblowers exactly what they have to show. And I read the form that he got. It's real clear. I mean, it's one of the better written forms, I have to say, that you see in the federal government. It's just as clearly as possible. It says you have to tell us what evidence you have of a non-frivolous allegation of a nexus between the event and the disclosure. And I don't see it in his papers. Well, Your Honor, I realize I'm over my time. I want to ask you another question before you sit down. So why don't you, you want to finish answering? As I sit down, I will look through the appendix and take a look at that, Your Honor. Okay. I just want to go back to prohibited personnel practice in Section 2302, which you cited. Yes. Now, it does have a list of different things like not denial of benefits as being one of the personnel actions. But then it also says specifically it's with respect to an employee in or an applicant for a covered position in an agency. So how does this cover Mr. Kerrigan? Well, I mean, I guess Mr. Kerrigan was treated here, you know, as I said, as a government employee. I mean, that is how he obtained benefits. That is how his benefits were being maintained by the Department of Labor. But was he either a government employee at the time of his disclosure or in a government employee at the time of the action that he's complaining of, which is the removal of the benefits, the prohibited personnel action? He was an employee when he obtained his injury and the incident form was, the first incident form was created. And then he was a recipient of benefits as an employee who had been injured on the job when, you know, his CA-16 form was destroyed. So the document which led to the illegal conduct, that was generated when he was still in the process of being injured and applying for benefits. But this is defining personnel action and prohibited personnel action. And it specifically says, with respect to an employee in or an applicant for a covered position in an agency, that the personnel action, the prohibited personnel action applies to someone who is an employee or an applicant in a covered agency position. So how can that go back to years and years ago during the six months that he was an employee? In my opinion, Your Honor, because, again, there's this nexus here between his government employment and the injury, he should be treated as a government employee and not, you know, be treated differently because of the circumstances of his injury. It would seem patently unfair. Let's say Mr. Kerrigan lost his benefits because of, you know, racial or ethnic discrimination. I mean, to say that he couldn't raise a claim... This is a whistleblower protection act. Maybe it doesn't cover former employees or removal of benefits from covered employees. But the position of the board here, Your Honor, the position as I understand it, is that nobody has jurisdiction to hear this retaliation claim. So let's say it was credibly clear that this was a result of retaliation, but there was a document that was present, you know, within the Department of Labor that says, we didn't refer him until the day we got his notice of allegations because we were sick of him. And we said, we don't want to fight with this guy anymore. We're going to take an adverse action against him. If there was evidence of that, the position of the board would be that nobody can review that. And that just doesn't sound right. But that would be true. You would concede, I think, that that would be true in the case of Judge Prost's example back at the beginning of the argument of somebody who had never worked for the government. She goes to the Social Security. She says, I think you all are a bunch of jerks. And they say, oh, do you? Well, we'll just cut off your benefits. Now, there may be some statute out there that gives you protection. You might have a constitutional claim if you said, you know, you've cut off my benefits for discriminatory reasons. But you don't have a whistleblower action. Yes, but, you know, I do think because, again, he worked as a government employee. He was injured while he was a government employee. He obtained benefits through his government employment. One final, very brief question. This whole whistleblower protection action started something like 12 years after he was denied his benefits. I don't know why the board didn't write his latches. I know there's not a statute of limitations, but is there a reason, an explanation for what happened for 12 years? Yes, and there's a reason why the board didn't raise it. So when this all occurred, Mr. Kerrigan filed a district court action. He thought he had an action in the district court. He filed in federal court in Pennsylvania. That worked its way through the courts. The courts said, we don't have jurisdiction over this. You have to go to the agency. So then, once his court proceedings are all complete, he goes to the agency. And when did the court proceedings end? It's actually in the opinion. I think it was 2007, right? I think that's right. And then there was a second action that he tried to file against. So first he filed an action against the agency. Then he filed an action against the doctor who reviewed his file but never actually spoke to him. So he filed that action. That was also dismissed. And then he went to the court. Thank you, Your Honor. Thank you, Luis. We have a couple minutes for everybody. Good morning, and may it please the court. I would like to start with the question the court asked counsel about the scope of the Whistleblower Protection Act and whether it covers former employees. I am aware of two non-presidential decisions from this court that address that issue. They're not cited in our brief because this issue wasn't raised in the court's opinion and order, but those are Guzman and Nasuti. And they both hold that a former employee may be covered by the WPA but only to the extent that the whistleblower claims raised were raised during his employment. And what are the sites to those cases? The sites are Guzman is 53, Fed APPX 927, and it's a 2002 decision. And Nasuti is 376, Fed APPX 29, and it's a 2010 decision. Other than those two, I'm not aware of any Federal Circuit presidential decisions on this issue. Do you have a view on the statutory provisions we're talking about and what, in response to your friend's arguments, that he's limited at least the scope of the universe to persons, and you understand his argument, because of this whole injury and this whole relationship that the appellant established with DOL was predicated on what occurred while he was a Federal employee and what happened to him. That makes it much more of a nexus. He's not just any random former employee. I understand that argument, but he did not actually make his whistleblower disclosures while he was a former employee. He made them more than a decade after his employment was terminated while he was receiving these benefits. Well, that's true, but under the circumstances, that's just the way it turned out. There's nothing willful about that. That's just obviously he was no longer... Well, the issues he's complaining about are not issues that arose during his employment. They're issues in the administration of his benefits, which occurred after his employment was terminated. What about the question of whether the employer-employee relationship that is addressed by the Whistleblower Protection Act has to be an employee of the employer who has acted against the employee? Do you think here we've got an employee of the Department of Defense who's raising a whistleblowing action against the Department of Labor? Do you think that falls within the WPA? I think that's sort of an uncertain question. There's a board case on that called Weed that is a precedential case, and I can give the sites for that as well. I know the Weed case. That actually addresses that exact issue, and it holds to the contrary, that an employee can bring a claim against an agency other than the one that employed him, but there's some tension with that case and this New City case and this Guzman case, and the board, I think partially for that reason, chose not to resolve this issue in this decision, and that's part of the reason why the board chose to rely on the much clearer issue that the FECA does not provide this review at all. I'm sorry, proposes this review. So the board's, but under the precedent you cited, the board's position is that if you're an employee of DOD, then that gives you, you can do a whistleblower complaint against IRS because of your personal taxes, but it has no relation. I think it still has to have something to do with your employment as a government employee. I don't think it would be your personal taxes, but for the board, I think in Weed, addressed the issue of maybe there was a transfer or a detail to another agency, so that while you're on a detail, for example, you're technically still employed with a DOT. Well, to me, in my mind, there's an enormous distinction between somebody who's a detailee because they're an employee of sorts. I mean, a lot of benefits inert to you. You take your benefit package with you when you go on detail to another agency. To me, that's nothing close to the kind of different agency we're talking about here in DOL or IRS or Social Security Administration, right? Well, I think it is. In the Weed case, because it was an issue of a detail or transfer, it was closer. I think in a case like here where there's absolutely no relationship between the employing agency and the agency that administers benefits other than the fact that he was injured and therefore was entitled to benefits, I agree it would be much more of a stretch. I guess the next question, though, and we talked with your opposing counsel, took up almost his entire argument on these issues. But can we even reach these issues under Chenery since the agency didn't decide the case on the basis of any of these issues having to do with the scope of the WPA other than the 8128 and the non-frivolous allocation issues? I think under Chenery and under Killip that you can reach these issues because the administrative judge did decide the case on that issue, which is that as neither an employee nor an applicant for employment, there could be no personnel action. But the board did not. The board did not. So my understanding is the board speaks for the agency and not the administrative judge, and therefore we're reviewing the board's determination, not that of the administrative judge. Isn't that right? That's true, but there have been cases where an administrative judge has held A, the board has reversed it and held B, and this court has reversed the board and reinstated the decision of the administrative judge. Under Chenery and under Killip, if you don't need to make additional fact-finding, if you're simply relying on an alternative legal argument, that's something that the court can do. And the board here, although it vacated that aspect of the decision, it did not actually reverse it or offer any analysis to the contrary. It simply offered an alternative legal holding. Can I take you to the non-frivolous allegation question, which the board sort of relied on a very long footnote as an alternative. Is the board's position that timing is enough to establish a non-frivolous allegation, or do you also need to identify that the persons that engaged in this conduct were aware? The board's position is the latter. I think there are often questions of timing, and in this case the timing is close enough that had the other elements been established, I think the board would agree that the timing in this case is suspicious. However, the other elements were not established because there was no specific non-frivolous allegation that anybody who proposed this action or took this action had any idea that he had made disclosures to the OIG. Well, couldn't that have been hard to show in a case like this where the person's not actually employed at the agency? Maybe when you're actually employed at the agency you have more access to that kind of information. Isn't it so that other evidence could have been presented or allegations could have been made? Well, there's a threshold of jurisdiction, which is where he got hung up, and had he actually made a non-frivolous allegation, he would have established jurisdiction, been entitled to hearing, been entitled to discovery on the issues that were going to be addressed at his hearing. So if he had offered allegations that were non-frivolous, he would have had discovery against the agency and then he could have said, you know, give me all your documents related to this issue and perhaps something would have come out or would not have come out. What's an example of something that would be a non-frivolous allegation that he could have provided here? He could have explicitly said, not by implication, not by inference, but explicitly said, I made these claims to the DOL OIG. They sent those claims over to the OWCP. The OWCP knew about them, and as a result of knowing about these claims, they terminated my benefits. He did not say that. Can I ask you about that? Because I'm very confused. I had not focused on this before, but your friend turned our attention to A190 and 191, the sworn declaration by Mr. Kerrigan. And so I'm just kind of looking at it carefully for the first time, but it seems as if the first paragraph on 191 does list all these people in OWCP and does seem to say they have been notified in person or by mail regarding fraud or will be shown. It's rather ambiguous because if you read it, only this paragraph, you might believe that, but if you read it in the context of his rather voluminous and confused filings, he is constantly accusing everybody of fraud, and there's a difference in the fraud of which he accuses them in administering his claim and the fraud that he says he then reported to DOL, and then the additional fraud that as a result of that, they terminated his benefits. He calls everything fraud. So you don't think he's referring here to the fact that they were notified, i.e., through the, you know. Well, I think what he may be talking about, and it's a little hard to tell because it's, you know, it's not explicit, is his substantive claims regarding the termination of his benefits, that he chose his doctor or he was not allowed to choose his doctor or they lost his form. It's basically the claims that he actually then went and made whistleblower disclosures on, which is that they destroyed evidence, falsified evidence, all of that. I think, as I read it, that's what he's talking about in this paragraph. He may be saying that he told those people that they had committed fraud, but that's not the same thing as telling those people that he reported their misconduct to another entity. Maybe he could have made a whistleblower claim on this, but he didn't. The whistleblower claim he articulated to the board is that he reported misconduct to the OIGs of two agencies, DOL and DOD, and because he did that, his benefits were terminated. But the missing link is that he never alleged that the people doing the terminating of benefits knew he had reported those allegations to the OIG. If there's no further questions on those issues, I'd also like to turn to the question. I take it that that document that you were reading from was part of this motion to seal. Yes, that was one of them. It wasn't in his jurisdictional response. No, that was part of the motion to seal, which I believe was considered because neither the administrative judge nor the board said anything about not considering it, and usually they consider everything in the record unless they explicitly say otherwise. I'd also like to address the basis on which the board actually ruled, which is that the FECA forecloses review of this whistleblower action because it says that nobody can review benefits decisions. I think it's pretty plain under the language of the statute, which says that no agency or official can review benefits decisions, and so that even though whistleblower claims would normally be within the board's sphere, it's cut off in this case because there's no way to review what OWCP and ECAB held without actually looking at the substance of the determination, the reason for the determination, and that kind of review is barred by the statute. And that would be true of civil rights cases or not? There are carved out exceptions for that, right? Well, I mean, if you brought a civil rights case, you mean with respect to if he had said... If they terminated his benefits because they said, we don't like you because of your race, and that's why we're terminating your benefits. Well, that ordinarily probably would not be within the board's jurisdiction anyway. He might be able to go to the EEOC on that, but I would assume that the statute would also foreclose that sort of review by an agency. Possibly he could get into district court on a constitutional claim, and I think in one of his district court cases, the court actually noted that the statute notwithstanding, the court might have jurisdiction to hear some sort of claim if there was a real substantive due process claim, but that he hadn't shown it, and that was the reason that they were denying it, and that was one of the Third Circuit decisions, and I think it is referenced in the board's opinion and order. The district court may have that power, but the board does not. The board's jurisdiction is very strictly limited and defined by statute. If there are no further questions? I would like to explore the VCA issue, the jurisdictional limitation in the statute a little bit more. So what is the line that you draw between cases such as minor, which are outside of the preclusive effect of the statute, and this case where the issue is not the correctness of the denial? It is the relationship between the disclosure and the denial. The distinction is that in minor, there was a separate action, separate from the OWCP or ECAB proceedings on which the board could rule. The agency, his employing agency, took a separate action against the petitioner there, and that is what the board was ruling on. There's nothing like that here. The only thing at issue is the OWCP and ECAB decision. There is no subsequent agency action because he wasn't employed by an agency, so there was nothing for the board to rule on. Would it defeat the whistleblower protection claim if the – I guess this goes to the question of whether there's clear and convincing evidence that the action would have been taken anyway, but at least at the initial stage, the whistleblower protection claim doesn't – the claimant doesn't have to show that he would have been entitled to the benefit, right? That only comes up as part of the affirmative defense of the agency, and then the agency has to show by clear and convincing evidence that they would have taken the same action anyway. That's right, but that's part of the merits determination, so that's not an issue in a jurisdictional determination like this one. You say it's not part of the merits – It's not part of the jurisdictional determination. I'm not sure I understood the last part of what you said. I'm sorry. The clear and convincing evidence test is part of the merits determination. Right. That's not something the petitioner needs to show as a non-frivolous allegation. Right, that's my question, and that's why I'm wondering why it is that that is necessarily tied in with his whistleblowing protection action. In other words, if he made a false statement on his application for benefits and also made a whistleblower protection or whatever, that would not be foreclosed by the 8128B, right? I mean, the false statement and action firing him for making a false statement. Well, if his employing agency fired him for making a false statement, which is what happened in Meijer & Miller, no, that would not be foreclosed. But that's not what happened here. I understand, but the question is, why is that not like this case since we've agreed that the question of whether he would have gotten his benefits anyway or not is not part of his affirmative case? It comes into the question only as an affirmative defense. Well, I think there's sort of two issues. One is that it's something that's part of the merits test, not part of the jurisdictional test. If you don't meet the jurisdictional threshold, the board can't go on and sort of bootstrap it in on the merits. Right. Well, go ahead. I'm sorry, I lost my train of thought. You understand what I'm trying to get at, where I'm going with this, or trying to go, is the question of the extent to which, in order to decide the Whistleblower Protection Act question, you really have to go to the merits of the underlying agency decision. And if you don't, then I guess Meijer & Miller say, well, then it isn't foreclosed by 8128B. Why do you have to get to the merits in a Whistleblower Protection Act claim? It depends on the nature of the Whistleblower Protection Act claim. If you have a separate action by the agency and you say the employing agency terminated me and part of the reason was that I went to OWCP and I made whistleblower claims to OWCP, and therefore you can decide the whistleblower issue without adjudicating whether the OWCP decision itself was correct, then I think that would be collateral. That would be outside the scope of the statute. But if your only claim as here is I went to OWCP and they terminated my benefits because I'm a whistleblower and the board would have to review the actual substance of whether or not you should have gotten these benefits. Don't they just have to look at whether his benefits would have been terminated anyway, regardless of the whistleblower activity? That's part of the substantive determination made by OWCP that is foreclosed by the statute. It says the action of the secretary in awarding or denying benefits. The board under the statute cannot inquire into any reason. But if we're not looking at the correctness of it, but would it have happened anyway? Those are two different issues. But how do you determine it would happen anyway unless it was correct? If the only, and the board has no power to reverse it. The decision of the secretary is final. The board would have, even if the board, even if it were explicit and the decision said we are terminating your benefits because you're a whistleblower, the statute forecloses review and the board cannot reverse it and the board cannot review it. And that's because in the merits determination, the agency, even as long as they can prove by clear and convincing evidence that they would have taken it in any event or otherwise. I think the board can't even reach that issue. No, but that's why you're saying that they can't because that would necessarily be part and parcel of what they would have to get to if they were to take this case. I suppose if you could carve out some way to address whistleblowing in isolation and find that there was whistleblower retaliation but then not address whether the same action would have been taken and not offer any remedy and basically do nothing other than make a finding that there may have been whistleblower retaliation, I guess the board could reset. But I think Judge Stoll was alluding, even when we're talking about them establishing that they would have taken it anyway, that's distinct from whether they did the right thing. I mean, they could have a paper trail that said we had these doctor's letters and we told him and so we've proven that. That wouldn't go to whether they did the right thing or whether something they did was improper. But it goes to their reasoning as a whole and the statute says the action, I mean, in allowing or denying a payment and I think any reasoning that they relied on, mathematical or otherwise, is part of that. Thank you. Thank you. Thank you. Before I go to some of the pages that I wanted to mention, on this jurisdictional question, I mean, I think it's very clear and I don't believe there's any case that supports the MSPB's decision in this case that to review the Whistleblower Protection Act claim here, there is no need and it would not be required to review whether or not Mr. Kerrigan could be terminated. Just as in Minor, the question in the WPA, whether he had been retaliated against, is entirely collateral. In fact, it's a better case than Minor. In Minor, the arbitrator had to review the same operative facts. If we take this, if they take this case and we go to the merits, the agency, I guess the agency here is the Department of Labor, is going to come in, as they can, and present an affirmative defense, which happens in every case, that say, no, we would have taken this action anyway. So this action being we would have terminated his claim to benefits. So that becomes part and parcel of this case with the board evaluating whether or not they've established to their satisfaction that they would have taken the action in any case. Do you understand what I'm saying? I don't know that I do, Your Honor, because that seems like, what was just said seems contrary, as I understand Minor to be. Because in Minor, they did talk about some of the same facts that were in the underlying agency determination. But what the court said is that they said, well, the arbitrator, there's a statutory provision, a separate claim that gives the arbitrator the right to review whether or not an employee made false statements. Well, here there's a statute that gives Mr. Kerrigan the right to bring a WPA claim. And the claim is not you can't terminate somebody for failing to attend vocational training. The claim is an adverse action was taken against Mr. Kerrigan because he made fraud allocations. That issue was not before the ECAP. That is not something that the ECAP had to decide. That is a strictly separate cause of action. But what the board would have to decide, in almost virtue of dead certainty, the way these things play out, is whether or not the case of the agency for terminating his benefits was so clear and surely would have come out the same way without regard to whatever statements he made. That question becomes foremost in 98% of these Whistleblower Protection Act cases that go that far. And that is a question which would require the MSPB, I guess, to determine whether the board got it right or not. Would it not? I don't think so, Your Honor. Because the issue that they would be presenting, what they would be saying, as I understand it, is they would be saying, we would have referred him to vocational training even had he not made those fraud allocations. So they would have had to explain away the fact that the referral, which wasn't made for all these years, was made upon the notice of allegations. So there's an allegation of fraud made and this happens. So they would have to explain by clear and convincing evidence. And the MSPB would have to decide, would it not, whether that explanation was so powerful in its evidentiary support that it was clear and convincing evidence that the board got it right. They would have decided this willy-nilly with no disclosures.  Well, that issue was not decided by the ECAB, Your Honor. So in other words, I think there's two points here. So one is the question of whether or not you could terminate him. Mr. Kerrigan isn't arguing that you can't terminate somebody's FECA benefits if they fail to obtain vocational rehabilitation training. That's not his claim. His claim is that an adverse action was taken against him. So what the Department of Labor would have to show is that they would have taken the adverse action anyway. What is the adverse action? The adverse action is the referral to vocational training, which could have occurred at any time, but only occurred. So they refer someone to vocational rehabilitation who's got part of their spine removed, and they refer that person to training when they receive these allegations of forgery and destruction of evidence. So that could have occurred at any time in the eight years. Had they made that referral in 1998 and he didn't show up and they terminated benefits, I wouldn't be here today, Your Honor. But the termination of benefits is ultimately what he's complaining about, right? No. Because otherwise, how is he in the statute? The case is about the adverse action. It's about that referral. It's about that action. That action is not part of the ECAB's decision. It's a separate claim. That's the whistleblower claim. And the relief would be? The relief would be subject to the discretion of the MSPB. The MSPB has broad discretion to grant status quo anti-relief and all sorts of other types of things that are within its jurisdiction. No, no, no. But it wouldn't be the restitution. It wouldn't necessarily be the restitution. Why not? If you prevail and you say they determined that there was an unlawful referral to vocational training, it was unlawful because it was predicated solely on his protected disclosure. Yes. But then the remedy is that the referral is taken off the table. Well, if you retroactively take the referral off the table, then you've got to restore his benefits. Without the referral, there's no basis for rescission, right? That very well may be the case,  That's an issue to be determined by the board after a hearing. I mean, the point that I'm trying to make, Your Honor, is on jurisdiction. We've got to determine whether or not the board is correct that they would be stepping on the statutory prohibition against reviewability if they decided this case. There's no element of Mr. Kerrigan's claim that relates to whether or not he could have been terminated. There's no element of the claim. That is not an element of the claim that's being made. The element is that there was a retaliatory action that was not considered by DCAP. So, again, the issue that this is an entirely separate proceeding, it's just like Minor. I mean, it's a separate proceeding whose jurisdiction lies with someone different from... But it is different from Minor and Miller, right? You agree that it's different from Minor and Miller, and that in Minor and Miller, there was a removal action, not a seeking of the benefits under FECA that had been found under FECA to not be allowed anymore. There, the corrective action, if the Whistleblower case was successful, would have been re-employment, not restatement of benefits, right? In those cases... I'm not positive sitting here. I thought one of those cases was benefits. I think they're both removal. But regardless, in those cases, the issue that the court's holding is based on is the idea that it's a separate proceeding, that there is one proceeding whose jurisdiction lies within the agency... I understand that. You're in trouble with anything, with your argument. I want to let you know this so you can respond, okay? But if I have any trouble at all with your argument, it's that those cases are different because the remedy that you would seek here seems very much like what is final and conclusive for all purposes under FECA. And so, to the extent that you can help me understand how minor and miller it doesn't matter what the remedy is, if you have an argument like that, I'd like to hear it. Well, I think that's correct, Your Honor. I don't think the remedy matters. I think the way I understand the case law, I understand those cases, is that the issue is whether there is a... whether there is a separate collateral proceeding. There can be an overlap of facts. Minor says that. In fact, minor, the facts are almost identical. There can be an overlap of facts. There just has to be jurisdiction for the claim has to lie with somebody else. And to my knowledge, this court has never said... has never said or taken the legal position that the MSPB is asking for here. They have never said... that it necessarily has jurisdiction to provide relief. And so, it's appropriate for us to look at the nature of relief that would inert here, right? I think that's correct, Your Honor. And when your answer a few minutes ago was, well, they have authority. They could provide any kind of relief. What kind of relief could they provide? Other than saying, well, we're going to require rescission of that unlawfully executed decision to send him to vocational training. If that is rescinded, then everything that the DOL did has to be rescinded. But that question, so that issue of the rescission of vocational, that, again, that is not something... that is not something that was considered by the ECAB. That was not a question or an issue that was before the ECAB. It is... it's not... There's no challenge here. Didn't they rescind his benefits because he refused to go to... They rescinded his benefits because he did not attend vocational training. Okay. Well, if the record takes away the order to go to vocational training, if that's obviated by something the board does, then there's no other basis for them to have rescinded his benefits. Sure, Your Honor. But, again, the statute talks about revering the... revering that determination that his benefits should have been taken away because he failed to attain vocational training. Did he argue before the ECAB that the referral was inappropriate? He argued in front of the ECAB, I believe, that there was... that he was exploring his due process rights. Well... And he argued before the ECAB that he had made fraudulent... he had made a disclosure that the CA-16 form was forged. Right, but did he argue that the referral, for whatever reason, was inappropriate? Did he challenge the referral? He did not specifically call out the referral. He talked about the process generally. Okay. And so, since I'm substantially over time, I did want to get back to your... just a question real quick about sort of the merits. So, in his initial filing with the board, or with the MSPB, he included a document, A-25. And in A-25, it's a letter from March 2002 notifying Mr. Kerrigan of... you know, that his benefits were going to be reduced. But that's the benefit determination. Yes. So that issue... that letter is signed by Jeanette Hill, and Jeanette Hill is named on page A-191 in Mr. Kerrigan's sworn declaration, which, as counsel for the MSPB stated, I understand, was considered as part of this overall file. And in that paragraph, he does identify Jeanette Hill as a person who was aware of this file. So, thank you. Thank you. We'll take both sides in the case.